# In the United States District Court
# for the
# Western District of Texas

| JAMES DOMINGO ACOSTA | § | |
| --- | --- | --- |
| | § | |
| v. | § | SA-09-CA-338 |
| | § | SA-06-CR-364 |
| UNITED STATES OF AMERICA | § | |

**ORDER**

On this day came on to be considered James Domingo Acosta's motion to vacate brought pursuant to 28 U.S.C. § 2255 (docket no. 49) and the United States Magistrate Judge's Report and Recommendation filed January 26, 2010 (docket no. 63) and Plaintiff's objections thereto (docket no. 66). After careful consideration, the Court will accept the recommendation and dismiss this case.

A Report or Recommendation of a United States Magistrate Judge that is objected to requires de novo review. Such a review means that the Court will examine the entire record and will make an independent assessment of the law. The Court need not, however, conduct a de novo review when the objections are frivolous, conclusive, or general in nature. *Battle v. United States Parole Commission*, 834 F.2d 419, 421 (5th Cir. 1987). In this case, Movant objected to the Magistrate Judge's recommendation, so the Court will conduct a de novo review.

## BACKGROUND

The Magistrate Judge thoroughly recounted the facts of this case. In summary, Acosta was charged in a July 19, 2006 indictment with being a felon in possession. He was appointed counsel from the Federal Public Defender's office to represent him. He pled guilty to the charge on March 22, 2007. During the March 22 hearing the Court advised Acosta of his rights and Acosta acknowledged the following:

- he understood what was happening and had no doubts about his own competency;

- he had enough time to discuss with his lawyer the facts of his case and any possible defenses he might have;

- he was satisfied with his lawyer's representation;

- he understood that he had the right to plead "not guilty" and no one could force him to plead guilty;

- he understood his rights and the effect his guilty plea would have on certain rights;

- he had talked with his lawyer about the possible effect of the sentencing guidelines on his sentence;

- he understood he faced a mandatory, statutory minimum term of imprisonment of at least fifteen years and could be sentenced up to life imprisonment;

- he agreed with all of the facts included in the Government's factual basis, including that he had six prior convictions for crimes of

violence; the victim of an alleged burglary "positively identified" defendant as the person he had seen inside his garage without permission and then running from the garage carrying a duffle bag; defendant possessed the keys to a vehicle in which the black duffle bag was found; the duffle bag was found to contain property stolen from the residence of the victim, which included the hand gun described in count one of the indictment, and which was operable and manufactured outside of Texas; and defendant admitted to committing the burglary; and

- no one had threatened him or coerced him into pleading guilty.

With regard to the felon in possession charge, the Court engaged in the following discussion with the Defendant:

THE COURT: Mr. Acosta, after hearing the statement from, the Assistant U.S. Attorney, do you agree with everything he said?

PETITIONER: Yes, Sir.

THE COURT: Do you agree that on at least four occasions back in August of 1988 you were convicted of burglary of various habitations in a court here in Bexar County, Texas?

PETITIONER: Yes, Sir.

THE COURT: And do you agree that on two different occasions– or that on April 1, '96, you were convicted of two separate offenses, burglary of a habitation and burglary of a building with intent to commit theft?

PETITIONER: Yes, Sir.

THE COURT: Do you agree that on February 14, 2006, you were in possession of a .357 Smith & Wesson?

PETITIONER: Yes, Sir.

THE COURT: Given everything we have talked about, Mr. Acosta, do you have any questions?

PETITIONER: No, Sir.

THE COURT: Anything you want to talk to your lawyer about before we conclude?

PETITIONER: No, Sir.

THE COURT: Given everything we have talked about, how much time you might be looking at, do you still want to plead guilty?

PETITIONER: Yes, Sir.

THE COURT: Has anyone threatened you, coerced you, forced you in any way into pleading guilty?

PETITIONER: No, Sir.

Thereafter a Presentence Investigation Report (PSR) was prepared. On paragraph 10 of that report it indicates that Acosta was interviewed by ATF agents. During the interviews, he admitted he burglarized the residence, but denied exiting the garage of the residence carrying the duffle bag. Acosta admitted he was accompanied by another person during the burglary, but refused to name his accomplice.

A sentencing hearing was held on March 18, 2008. Defendant's counsel filed a sentencing memorandum prior to that date indicating that Acosta had

4

family support and urging that the judgment issued in the case reflect that the beginning date of the sentence imposed be February 14, 2006 (the date Acosta was arrested).

During sentencing, although the PSR did not recommend an adjustment for acceptance of responsibility, the Court nevertheless deducted 3 points for same. At Criminal History Category VI and an adjusted total offense level of 31, the guideline range was 188 to 235 months. The Court departed to the statutory minimum of 15 years (180 months). The Court also granted the Defendant's section 3585 motion and the judgment provided that the defendant should receive credit against his federal sentence for the time spent in custody since February 14, 2006. At no time during sentencing did Acosta attempt to withdraw his guilty plea.

Three days after the sentencing hearing, Acosta filed a notice of appeal. After Acosta filed a motion to withdraw the appeal, the Fifth Circuit dismissed the appeal.

On July 14, 2008, Acosta filed in this court a motion to run his federal sentence concurrent with a state sentence he was serving. Nowhere in that motion did the Defendant deny his guilt. This Court denied that motion.

He thereafter filed this motion to vacate. He essentially alleges ineffective assistance of counsel, arguing that his counsel failed to adequately investigate the facts surrounding the burglary. He argues that someone else (Simon Garcia) robbed the house, that person put the duffle bag into the truck he was in, apparently he did not know there was a gun in the duffle bag, and accordingly

5

he could not have been in constructive or actual possession of the gun. Acosta claims he has an alibi witness (Amy Brown) and allegedly his lawyer did not interview the alibi witness.

## ANALYSIS

"Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977) (28 U.S.C. § 2254 case). Thus, a reviewing court can "give great weight to the defendant's statements at the plea colloquy." *United States v. Cothran*, 302 F.3d 279, 283-84 (5th Cir. 2002).

Acosta admits he pled guilty and made the above statements, but contends that he felt coerced by his attorney's representations that he was looking at a life sentence if he did not accept the plea. Acosta further alleges that his attorney told him that he spoke with one or both of the witnesses (Garcia or Brown), that the attorney lied telling him that Garcia denied he robbed the house and Brown denied any knowledge of the situation, that in actuality the attorney had not spoken with either witness, and had he known that his lawyer was lying to him he would not have pled guilty.

Attached to his motion to vacate, Acosta includes an affidavit from Simon Garcia dated January 9, 2007. In this affidavit Garcia claims that on February 14, 2006: (1) he picked up Acosta in his truck and they were going to do some late Valentine's Day shopping; (2) he told Acosta he needed to stop at some location to first pick up a few things; (3) Acosta stayed with the truck as he secretly robbed a house; (4) the home owner caught him and he ran with a duffle bag from the home; (5) he ran back to the truck but Acosta was a block away

6

"relieving himself"; (6) he yelled to Acosta that the cops were coming and they ran to another location; and (7) he gave Acosta the key to the truck and some of the stolen jewelry, claiming it belonged to his girlfriend.

Acosta has not provided the Court with any affidavit from Ms. Brown. According to Acosta's motion, Ms. Brown would allegedly confirm that "she saw the person that actually placed the bag in the truck while she was driving; she saw defendant standing by the truck; and she saw who was originally driving the truck. She had originally stopped and had a conversation with the defendant about purchasing the truck."

Acosta's former counsel provided an affidavit to the Magistrate Judge in this proceeding.[1] In that affidavit, Assistant Public Defender Alfredo R. Villarreal stated that while he did not have a present recollection of Acosta's case, his file indicated he performed 97.7 hours of legal work in that representation. He further stated that his practice at guilty pleas is to advise clients to truthfully answer all questions asked by the Court. His affidavit is silent as to whether he did or did not interview Garcia or Brown.

Although the Court is troubled by the lack of detail in Mr. Villarreal's affidavit, the following is undisputed. On January 9, 2007, Garcia signed an affidavit claiming sole responsibility for the burglary. Apparently Acosta knew of this affidavit prior to pleading guilty on March 22, 2007. At the plea hearing, Acosta acknowledged under oath that on February 14, 2006, he was in

---

[1] Copies of the affidavit were provided to Acosta and the U.S. Attorney's Office.

possession of a .357 Smith & Wesson. Whether or not he committed the burglary on that date is not at issue in this matter. The only issue in this case is whether on February 14, 2006, he was a felon in possession of a weapon. During the plea hearing he admitted (under oath) to the factual basis of that charge. At various times during the proceeding, Acosta attempted to raise various challenges to the validity of the truck search on Fourth Amendment grounds. These attempts, however, never denied that he was in either actual or constructive possession of the handgun on the date in question. Acosta admitted to ATF agents that he participated in the burglary, which indirectly supports that on that date he was either in actual or constructive possession of the handgun. Acosta relies upon Garcia's affidavit for his exoneration, but Acosta offers no explanation why he began running and hiding from police if he did nothing wrong. As noted above, Acosta does not supply the Court with any affidavit from his alleged alibi witness.

The Court adopts the Magistrate Judge's recommendation. For the reasons stated above and the reasons cited in the Magistrate Judge's Report, the Movant's motion is denied. Acosta's prior statements made under oath at the plea hearing that he was satisfied with his attorney's representation and admitted guilt contradict his arguments that he is entitled to post-conviction relief.

It is so ORDERED.

SIGNED this 9th day of February, 2010.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE